UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| KENNETH D. MISCHKE, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:16-cv-01555-AGF |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Kenneth Mischke was not disabled, and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. For the reasons set forth below, the decision of the Commissioner will be affirmed.

## BACKGROUND

Plaintiff, who was born on August 29, 1982, protectively filed his application for benefits on November 18, 2013, alleging disability beginning March 18, 2013, due to continued back and leg pain following spinal surgery. Plaintiff suffered a work-related injury to his low back in October 2012, and had spinal surgery to address his back pain on

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this suit.

1

March 18, 2013, the disability-onset date. On January 10, 2014, Plaintiff's application was denied at the initial administrative level, and he thereafter requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on May 12, 2015, at which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified. By decision dated August 10, 2015, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform "light work" as defined by the Commissioner's regulations, except that Plaintiff was limited to only occasional stooping, kneeling, crouching, crawling, and climbing of ladders, ropes, and scaffolds; and Plaintiff should avoid hazards such as unprotected heights or dangerous machinery.

The ALJ next found that Plaintiff could perform certain light unskilled jobs listed in the Dictionary of Occupational Titles ("DOT") (cashier, housekeeper, and collator operator), which the VE testified that a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act. Plaintiff filed a timely request for review by the Appeals Council of the Social Security Administration and submitted additional evidence from a consultative neurologist, Raymond Cohen, D.O., who had previously examined Plaintiff in connection Plaintiff's workers' compensation claim arising out of his October 2012 work-related injury, and whose prior report the ALJ had considered. Plaintiff's request for review by the Appeals Council of the Social Security Administration

was denied on August 10, 2016.  Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's RFC in that the ALJ stated that there "was no imaging [performed] post-surgery to support changes that would reasonably cause the level of ongoing symptoms alleged" (Tr. 18), even though there was a post-surgery x-ray of the lumbar spine taken in October 2013 revealing degenerative changes, and the ALJ also failed to properly evaluate the limitations from extreme obesity on Plaintiff's RFC.  Plaintiff further argues that the ALJ failed to properly evaluate the medical opinion evidence provided by Plaintiff's treating physician, Mary Mason, M.D., and by Dr. Cohen.  Finally, Plaintiff contends the decision of the ALJ is contrary to the weight of the evidence currently of record, including the supplemental evidence provided by Dr. Cohen.

**Agency Records, Medical Records, and Evidentiary Hearing**

The Court adopts the statement of facts set forth in Plaintiff's Statement of Uncontroverted Facts (ECF No. 18), as amended by Defendant (ECF No. 25-1), and in Defendant's unopposed Statement of Additional Facts (ECF No. 25-2).  These statements provide a fair description of the record before the Court.  Specific facts will be discussed as needed to address the parties' arguments.

**ALJ's Decision Under Review (Tr. 10-27)**

The ALJ concluded that Plaintiff's medically determinable impairments of "degenerative disc disease of the lumbar spine status post-surgery" could reasonably be

expected to cause his alleged symptoms of back and leg pain, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. The ALJ noted that Plaintiff underwent an L5-S1 laminectomy with discectomy and decompression of cauda equine and spinal nerve root in March 2013, after failing conservative treatment with epidural injections, physical therapy, and activity modification. The surgeon was Donald A. deGrange, M.D. The ALJ found that after the surgery, Plaintiff still had symptoms, but they were much less severe. As indicated above, the ALJ noted that there was no imaging performed post-surgery to support changes that would reasonably cause the level of ongoing symptoms alleged.

The ALJ also cited Dr. deGrange's treatment records and noted that, post-surgery, Plaintiff continued to have a decreased range of motion of the lumbar spine, but had no significant tenderness to palpation. Exams showed his straight leg test was repeatedly negative and only mildly positive with increased activity. Plaintiff had good strength in his lower extremities and no sensory deficits. He attended physical therapy with an improvement in back pain and 50% improvement in left lower extremity symptoms. By the end of May 2013, Plaintiff was not taking any medication, and after he was released from his surgeon's care at the end of June 2013, he still had no lumbar tenderness and had a normal range of motion, strength, and sensation. Although Plaintiff appeared in mild pain and walked with a limp, he could perform a heel and toe walk and continued to have normal posture and a non-tender back in September 2013.

The ALJ also noted that Plaintiff received very little treatment with no consistent

4

medical visits between December 2013 and February 2015, and did not fill his pain medication again until February 2015. Although, without medication, Plaintiff had tenderness to palpation and an antalgic gait, his back and leg pain improved with medication. Moreover, during the evidentiary hearing before the ALJ, Plaintiff testified that medication helped to alleviate his back pain and also dulled or numbed the nerve pain in his leg.

The ALJ found that treatment notes from Dr. deGrange indicated that Plaintiff recovered to maximum medical improvement three months post-surgery, and at this time, the only work-related limitation imposed was a 50-pound limit on lifting and carrying, which was consistent with light work. The ALJ noted that Plaintiff was obese and stated that he considered Plaintiff's obesity in evaluating the RFC, but that, even with obesity, Plaintiff had rather mild clinical findings, as noted above, and was able to support his obese body habitus with a normal gait and station.

Finally, the ALJ relied on Plaintiff's disability application and hearing testimony to find that, during the time he was allegedly disabled, Plaintiff lived independently, drove, cared for his two-and-a-half-month-old child independently during the day, was able to take care of his personal needs at a slower rate, attempted to help his friends and family cut wood, and received unemployment benefits, all of which were inconsistent with Plaintiff's claim of disability.

The ALJ gave little weight to the September 16, 2013, medical source statement of Plaintiff's primary care physician, Dr. Mason, who opined, largely in check-box form, that

5

Plaintiff could sit for four to five hours and stand or walk for two to three hours in an eight-hour day; could not sit continuously and needed to get up and move every 15 to 20 minutes for 20 minutes; could occasionally lift 10 pounds and carry up to five pounds; had moderate limitations in grasping, turning, and twisting for objects, and marked limitations in reaching; could not do full-time competitive work that required activity on a sustained basis; would need unscheduled breaks every one to two hours for 15 to 20 minutes; would miss work two to three times per month; needed to avoid heights; and could not push, pull, knee, bend, or stoop.

The ALJ found that the record as a whole, and Dr. Mason's own treatment records, generally showed that Plaintiff had no tenderness, and had full strength and normal sensation, except after cutting wood or not receiving treatment. The ALJ further found that Plaintiff's ability to perform a full range of activities of daily living, including independently caring for his infant son, was inconsistent with Dr. Mason's findings, including the need for unscheduled breaks. However, the ALJ took into account Dr. Mason's narrative finding that jolting while sitting, standing, walking, bending, and lifting, were precipitating factors to Plaintiff's pain, and found that these factors, as well as Plaintiff's obesity, limited Plaintiff to only occasional stooping, kneeling, crouching, crawling, or climbing ladders, ramps, or scaffolds.

The ALJ also gave little weight to the April 28, 2014, report of the workers' compensation examiner, Dr. Cohen, who opined that Plaintiff would be restricted from work that involves any repetitive bending, lifting greater than 10 pounds, stooping,

twisting at the waist, squatting, kneeling, getting up and down from the floor, walking on inclines or uneven surfaces, climbing, being around heights or dangerous equipment, pushing with the left lower extremity, sitting or standing for longer than 30 to 40 minutes without a five-minute break; and walking more than 10 to 15 minutes without rest. The ALJ found that the opinion was based on a one-time examination of Plaintiff and that the findings were not consistently repeated on prior or subsequent exams.

The ALJ further found that, even considering the reduction in strength of the lower extremities as found by Dr. Cohen, Plaintiff was generally able to support his obese body habitus with a normal gait and station; Plaintiff retained full strength on other exams; and contrary to Dr. Cohen's findings that Plaintiff could not walk more than 10 to 15 minutes without resting, Plaintiff testified at the evidentiary hearing that he could walk for approximately 45 minutes before resting. However, due to Plaintiff's claimed drowsiness from his medication, the ALJ added a limitation to the RFC that Plaintiff should avoid hazards such as unprotected heights or machinery.

**Additional Evidence on Administrative Appeal (Tr. 461-65)**

On July 2, 2015, Dr. Cohen completed a "Supplemental Medical Rating," in connection with Plaintiff's workers' compensation claim, in order to evaluate "a pre-existing head injury which occurred prior to [Plaintiff's] primary work-related injuries," and which arose out of a May 2002 car accident. Dr. Cohen noted that Plaintiff appeared to be extremely uncomfortable referable to his lower back, frequently moved from side to side in his chair, and stood up several times to walk around during the exam.

7

Dr. Cohen opined that his examination of Plaintiff's low back and lower extremities was "unchanged" from his prior exam.[2]

Upon review, the Appeals Council found that the ALJ's decision was not contrary to the weight of the evidence currently of record, including Dr. Cohen's July 2015 opinion.

## DISCUSSION

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations omitted). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th

---

[2] Dr. Cohen further found that a "mini" mental status test revealed that Plaintiff had difficulties with some short term memory testing, but that the mental status exam was otherwise without errors, and Plaintiff's overall thinking was somewhat concrete. Plaintiff does not assert any legal argument with respect to this or any other alleged mental impairment.

Cir. 2015) (citation omitted). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.*

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a severe impairment or combination of impairments.

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *See, e.g., Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). When a claimant cannot perform the full range of work in a particular

category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a VE (or other similar evidence) to meet the step-five burden. *See Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**RFC Finding**

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.* Here, the Court concludes that the ALJ's RFC determination is supported by sufficient medical evidence.

The ALJ's statement that there was no imaging performed post-surgery to support changes with respect to Plaintiff's back issues that would reasonably cause the level of ongoing symptoms alleged does not necessarily indicate that the ALJ ignored the October 2013 x-ray of the lumbar spine, as Plaintiff alleges. Rather, it indicates that the ALJ believed that the x-ray was not consistent with the level of disabling pain alleged by Plaintiff. Upon review of the x-ray results, as well as the record as a whole, the Court agrees.

Likewise, the Court finds that the ALJ properly considered Plaintiff's obesity when determining Plaintiff's RFC. "[W]hen an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal," and an ALJ's explicit statement that "he considered the combined effects of the claimant's obesity

10

with the claimant's other impairments when determining" the claimant's RFC demonstrates that "the ALJ properly considered the record as a whole." *Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015). The ALJ satisfied his burden in this regard.

**<u>Weight of Medical Opinions</u>**

Under the social security regulations in effect at the time of the ALJ's opinion, the opinion of a treating physician is "normally entitled to great weight." *Thomas v. Berryhill*, No. 16-4559, 2018 WL 704215, at *1 (8th Cir. Feb. 5, 2018) (citation omitted). "However, the Commissioner may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence," and "[t]he Commissioner may also assign little weight to a treating physician's opinion when it is either internally inconsistent or conclusory." *Id.* Additionally, a "physician's opinion that a claimant is incapable of gainful employment is often not entitled to significant weight." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017) (citation omitted).

Here, the ALJ did not entirely disregard the opinions of Dr. Mason and Dr. Cohen, but he ultimately assigned these opinions little weight as largely inconsistent with their own treatment records (in the case of Dr. Mason) or with other substantial evidence in the record, including the treatment records of Dr. deGrange, Plaintiff's conservative treatment history, Plaintiff's testimony regarding the alleviating effects of mediation, Plaintiff's self-reported activities of daily living, and Plaintiff's receipt of unemployment benefits. These were good reasons to discount the physicians' opinions. *See, e.g.*, *Fentress*, 854

11

F.3d at 1020–21 (affirming the ALJ's decision to discount a treating physician's opinion regarding the disabling effects of the claimant's back pain and fatigue as inconsistent with "physical examinations during the same time period which showed normal muscle strength, range of motion, and no pain or weakness in extremities"); *Wright*, 789 F.3d at 854 (holding that a conservative treatment history, including an "eight-month period during which [the claimant] sought no medical care," was inconsistent with complaints of disabling pain); *Andrews v. Colvin*, 791 F.3d 923, 928–29 (8th Cir. 2015) (holding that the ALJ properly gave little weight to a treating physician's opinion that was inconsistent with treatment notes indicating that the claimant's pain was adequately controlled with medication); *Thomas*, 2018 WL 704215, at *3 ("[S]elf-reported activities of daily living provided additional reasons for the ALJ to discredit [the treating physician's] pessimistic views of [the claimant's] abilities," including the claimant's "caring for her young son . . . ."); *Milam v. Colvin*, 794 F.3d 978, 984–85 (8th Cir. 2015) ("In seeking and obtaining . . . unemployment benefits, [the claimant] evinced a willingness and ability to work, which contradicts her claim of disabling pain."). This evidence also fully supports the ALJ's findings. The ALJ was responsible for weighing the conflicting evidence, and the Court cannot say that the ALJ's decision fell outside the available "zone of choice."

**Additional Evidence on Appeal**

The Court also agrees with the Appeals Council that Dr. Cohen's July 2015 report does not warrant reversal of the ALJ's opinion. The new report, as it relates to Plaintiff's alleged physical impairments, largely incorporated Dr. Cohen's conclusions from his April

2014 report, which the ALJ already considered. "Cumulative evidence submitted to the Appeals Council does not undermine the ALJ's RFC determination." *Harvey v. Colvin*, 839 F.3d 714, 717 (8th Cir. 2016).

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 14th day of February, 2018.